Richard J. ROTHFUSS,
Petitioner/Appellant,

v.

Pamela Ann WHALEN, Respondent.

No. 58581.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1991.

John B. Gray, Florissant, for petitioner-appellant.

Richard R. Veit and Mary Kay Stergos, Hazelwood, for respondent.

AHRENS, Judge.

Husband appeals from an order modifying the child support and custody provisions of the decree that dissolved the parties' marriage. We affirm.

On February 6, 1984, a decree of dissolution ended the parties' marriage. The decree granted to the parties joint legal custody of their minor children, Douglas and Darren, born August 6, 1969, and March 12, 1974, respectively. Primary physical custody was awarded to husband and temporary custody with reasonable visitation rights to wife. Husband was ordered to pay child support to wife during her periods of temporary custody.

After wife moved to Nevada, the decree was modified on June 26, 1984, to hold for naught the portions providing for joint custody and for husband's payment of child support to wife. Husband was awarded custody, with specific temporary custody and visitation rights reserved to wife.

In June of 1987, Darren travelled to Nevada to visit with wife. At that time, Darren informed husband that he wished to remain in Nevada, and husband allowed Darren to stay. Wife on April 28, 1989, filed a motion to modify the decree of dissolution, seeking primary custody of Darren, attorneys' fees, and child support retroactive to the motion's filing date. Husband was served with the motion on May 21, 1989.

Husband on August 25, 1989, filed in Nevada a petition for modification of the decree of dissolution and for assumption of jurisdiction under the Uniform Child Custody Jurisdiction Act. The Nevada court on December 6, 1989, awarded joint legal custody of Darren to both parties.

The subject of the appeal now before us is the Missouri trial court's ruling on wife's motion to modify, filed April 28, 1989. The trial court sustained wife's motion and awarded the parties joint legal custody of Darren, with primary custody to wife and temporary custody and visitation to husband for one week at spring break and Christmas, four weeks during summer, and at such other times as husband and Darren agree. The court further ordered husband to pay to wife $660.00 per month child support, retroactive to May 21, 1989. Lastly, the court ordered wife to pay the transportation costs to and from Nevada for Douglas' visitation, and ordered husband to pay the costs to and from St. Louis for Darren's visitation. The parties stipulated to a stay of any further proceedings in Nevada and to the trial court's consideration of attorneys' fees incurred in the Nevada proceedings. They further stipulated that the trial court's judgment be registered with the Nevada court, and that upon such registration the Nevada proceedings be dismissed. Husband appeals from the trial court's order.

We first consider a motion taken with the case. Wife moves to strike the "scope of review" section of husband's brief for failure to comply with Rule 84.04. Al-

though not in technical compliance with the Rule, husband's comments consist merely of broad statements of law and fact included in other portions of his brief; their inclusion does not impede our determination of the case on the merits. *See Maxbar Rlty. v. The Great A. & P. Tea Co.*, 627 S.W.2d 81, 82 (Mo.App.1981). Accordingly, wife's motion to strike is denied.

■ In his first point, husband challenges the trial court's determination of custody, seeking a longer period of defined temporary custody during the summer. He also challenges the court's order requiring him to pay the costs of transporting Darren to and from St. Louis for the periods of temporary custody awarded husband.

In reviewing an order modifying a dissolution of marriage decree, this court is limited to determining whether the order is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Wiebusch v. Deke*, 762 S.W.2d 521, 524 (Mo.App.1988); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc. 1976). The trial court is vested with broad discretion in determining child custody, because it is in a better position to consider all of the facts bearing on custody and the best interests of the children. *Griggs v. Griggs*, 707 S.W.2d 488, 491 (Mo.App.1986). This court is to affirm the decision of the trial court unless firmly convinced the welfare of the children requires a different disposition. *Id.* With respect to the custody provisions in the present case, we are not so convinced.

We find no abuse of discretion in the trial court's award to husband of four weeks' temporary custody during the summer. The record indicates that Darren at the time of the modification hearing had lived with wife in Nevada for 3½ years. During this period, Darren made friends, located part-time employment, and developed a serious interest in golf, hoping to earn a golf scholarship as a means of attending college. Darren expressed a strong preference for remaining in Nevada and appears to have adjusted well. Fur-

ther, Darren specifically stated that because of his employment and golf activities, summer visits with husband would be difficult to arrange. The trial court found that husband had stated: "[A]lthough Darren's wishes should be considered, they should not be paramount and other factors, among them Petitioner's poor health should be taken into consideration by the Court...." We are entitled to presume the dissolution court considered all the evidence and awarded custody in the best interest of the child. *In re Marriage of Stuart*, 805 S.W.2d 309, 313 (Mo.App.1991). We find that the court in making its custody determination neither considered Darren's preferences decisive nor failed to consider husband's ill health, as husband asserts. Rather, the court properly considered both as relevant factors under § 452.375.2, RSMo (Supp.1990).

Husband cites *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262 (Mo.App.1988), arguing that the custody determination in that case is somehow the "minimally appropriate" period of custody to be applied in every case. We disagree. The custody decision in *Siegenthaler* was based upon the determination that, upon the particular facts of the case, the welfare of the children required a disposition different from the one entered by the trial court. *Id.* at 266. In contrast, the facts of the present case support the trial court's custody determination. A good environment and stable home are considered the most important factors in custody cases, *Petty v. Petty*, 760 S.W.2d 555, 557 (Mo.App.1988), and the evidence here indicates that both these considerations are furthered by the trial court's order. We have reviewed the record with respect to husband's allegations that wife has interfered in his relationship with Darren. Although there was conflicting evidence, the trial court was in a better position to consider it. We find substantial evidence in the record to support the trial court's action, and we uphold its findings because we are not convinced that Darren's welfare requires a different disposition of custody. *See Crabtree v. Crabtree*, 802 S.W.2d 567, 569 (Mo.App.1991).

Husband has failed to rebut the presumption of the correctness of the court's ruling.

■ In his next subpoint, husband alleges the trial court erred in requiring him to pay the costs of transporting Darren to and from St. Louis for periods of temporary custody with husband. Husband argues that because wife caused the need for the transportation, it is appropriate to impose those costs on her. In support of his argument, husband cites cases in which one parent removes a child from the court's jurisdiction: *Koenig v. Koenig,* 782 S.W.2d 86 (Mo.App.1989); *Ronzio v. Ronzio,* 673 S.W.2d 100 (Mo.App.1984); and *Jaudes v. Jaudes,* 715 S.W.2d 329 (Mo.App.1986). We find these cases inapposite to the situation now before us, where the child after visiting one parent chooses to remain, and the other parent consents to the change of custody.

At the time of trial, the existing decree, as modified, gave primary custody of both children to husband and required wife to pay the transportation costs for her periods of temporary custody with the children. However, for 3½ years prior to trial, Darren had been living with wife. During this time, husband paid the costs of transporting Darren to and from St. Louis for visitation with husband, while wife paid the costs of transporting Douglas to and from Nevada for visitation with her.

While we recognize that an order apportioning the expense of exercising child custody rights need not mirror the parties' financial status, the financial circumstances of the parties is an important consideration in apportioning the expense. *Ronzio,* 673 S.W.2d at 101. The trial court has broad discretion in making the apportionment, and the order is reviewed only for a manifest abuse of that discretion. *Id.*

We find no abuse of discretion on the facts before us. The record indicates that husband's gross monthly income at the time of trial was nearly $7,000.00, excluding a yearly bonus of more than $16,000.00. Wife's gross monthly income at the time of trial was approximately $1,750.00, not including half of a $10,000.00 gift the trial court imputed to wife. We cannot say the court abused its discretion in apportioning the transportation expenses, given the parties' incomes and the fact that the parties had implemented for 3½ years prior to trial the same arrangement sanctioned by the court in its modification. The trial court could properly have found that Darren's move to Nevada and the accompanying expense constituted a sufficiently substantial change in circumstances to justify a second modification as to transportation costs. Additionally, it is appropriate for husband to pay Darren's transportation costs because the court's order provides for periods of temporary custody beyond those specified, upon agreement of husband and Darren. Because wife has no control over the frequency of additional periods of temporary custody with husband, it is unreasonable to subject her indefinitely to the costs of transporting Darren for additional periods. We find no abuse of discretion in the trial court's apportionment of the transportation expenses. Husband's first point is denied.

In his second and third points, husband claims error in the trial court's failure to find the amount of child support calculated pursuant to Civil Procedure Form 14 unjust or inappropriate according to the facts of this case. In the alternative, husband claims error in the trial court's calculation of the presumed child support amount in accordance with Form 14.

Wife objects to the form of husband's second and third points, alleging they fail to comply with the requirement of 84.04(d) that the point state wherein and why the trial court's ruling is claimed to be erroneous. Although the points are lengthy and somewhat wandering, we do not find them so vague as to deny consideration.

■ We must as a preliminary issue address husband's claim that the trial court failed to prepare specific findings of fact pursuant to his Rule 73.01 request. Husband's proposed Findings of Fact and Conclusions of Law consisted of a two-page proposal with five numbered findings. The remainder of his proposal consisted of a thirty-page discussion which did not include a request for additional findings on specific

controverted fact issues. Rather, it amounted to a discourse on the evidence of the case, much of which was transferred verbatim into the argument section of husband's brief on appeal. The trial court's judgment included twenty written findings of fact and seven conclusions of law which sufficiently addressed the controverted fact issues as required by Rule 73.01. Any failure to make more detailed evidentiary findings did not violate the requirements of Rule 73.01 and did not materially affect the merit of this action or interfere, limit, or hinder full appellate review. *See Eagleton v. Eagleton,* 767 S.W.2d 582, 586 (Mo.App. 1988). We have no difficulty discerning whether the trial court considered the evidence outlined by husband. *See Binkley v. Binkley,* 725 S.W.2d 910, 912 (Mo.App. 1987). Accordingly, we proceed to consider husband's claims of error.

■ First, husband contends that the trial court erred in strictly applying the child support guidelines in its award of support. He argues that the court failed to exercise its discretion and failed to consider all factors relevant to the award.

■ Section 452.340.7 RSMo (Supp. 1990)[1] mandates the use of the child support guidelines in determining the amount of child support. *Stuart,* 805 S.W.2d at 313. Rule 88.01 requires a court in making its award to consider "all relevant factors, including: (a) the financial resources and needs of the child; (b) the financial resources and needs of the parents; (c) the standard of living the child would have enjoyed had the marriage not been dissolved; (d) the physical and emotional condition of the child; and (e) the educational needs of the child." The factors correspond with the provisions of § 452.340.1 RSMo (Supp 1990). Section 452.340.8 RSMo (Supp.1990) and Rule 88.01 create a rebuttable presumption that the amount of child support calculated pursuant to the guidelines is the amount to be awarded.

This presumption is rebutted by a written finding or specific finding on the record that the amount calculated pursuant to the guidelines would be unjust or inappropriate in a particular case.

■ Although use of the guidelines is mandatory, a wide discretion is vested in the trial court with respect to the granting of child support, and that discretion is expressly retained under § 452.340.8. *Howerton v. Howerton,* 796 S.W.2d 665, 670 (Mo.App.1990). Nevertheless, the guidelines should be "accorded substantial consideration in determining and reviewing child support awards"; the only requirement is that they not be "rigidly or automatically" applied. *Sutton v. Sutton,* 801 S.W.2d 704, 705 (Mo.App.1990) (*citing Coit v. Coit,* 778 S.W.2d 344, 347 (Mo.App. 1989)).

Contrary to husband's assertions, we do not find in this case that the trial court in applying the guidelines failed to exercise its discretion or failed to consider the factors relevant to the child support award, as set forth in § 452.340.1 and Rule 88.01. In its Conclusions of Law, the trial court stated that "[n]o reason exists for the Court not to use the presumed child support guidelines." We interpret this finding to mean that the court, after consideration of all relevant factors, did not consider application of the guidelines unjust or inappropriate on the facts of this case. The finding does not indicate the court felt so constrained by the guidelines that it failed to exercise its discretion. In our review of the record, we find no abuse of discretion.

Specifically, husband argues that the trial court failed to consider the needs and financial resources of Darren, and the needs and financial resources of the parents. He also argues that a comparison of husband's and wife's households indicate that the parties' financial situation is well-balanced, so that no support should have

1. We look to § 452.340 even though this case involves a modification of a support decree rather than an award of support in the first instance. We do so because the modification statute, § 452.370 RSMo (Supp.1990), states that child support is to be determined in conformity with the criteria set forth in Rule 88.01. The factors in Rule 88.01 deemed relevant to the support award correspond with those listed in § 452.340. Rule 88.01 became mandatorily effective April 1, 1990, and governed the trial court's proceeding. Rule 41.06.

been awarded wife. We disagree. With respect to Darren, husband argues that wife on her income and expense statement both inflated and failed to prove the expenses attributed to Darren. He also argues that because the record indicates Darren's needs were being met, the support award was superfluous and an opportunity for wife to accumulate capital.

In addressing husband's arguments, we note that the trial of this case required the trial court to resolve sharply conflicting evidence, especially with respect to wife's income. The credibility of the parties was crucial to the trial court's determination. We acknowledge the superior position of the trial court to judge credibility, sincerity, character of the witnesses, and other intangibles not revealed in a trial transcript. *Riaz v. Riaz*, 789 S.W.2d 224, 225 (Mo.App.1990). Further, we view the evidence in a light most favorable to the prevailing party, accepting it and the reasonable inferences therefrom as true and disregarding contradictory evidence. *Id.*

Wife's listing of expenses for Darren is not so unreasonable as to have required rejection by the trial court; the expenses correspond to the award of support, which is presumed correct pursuant to Rule 88.01. A party's testimony as to children's expenses is sufficient evidence on which to base an allowance of child support. *Coit*, 778 S.W.2d at 346. The expenses need not be proved with absolute particularity, and the trial court may, at its option, accept or reject such evidence. *Id.* Further, although the record indicates that wife was meeting Darren's needs prior to the award of support, there is also evidence that wife was going into debt to meet those expenses. The trial court had the prerogative to believe such evidence, and wife's ability to meet Darren's needs did not prohibit an award of child support. *See Williams v. Williams*, 510 S.W.2d 452, 455 (Mo.banc 1974).

The financial resources of the noncustodial parent is the primary factor in a trial court's determination of the reasonable needs of the children and the reasonable ability of the father to meet those needs. *Meadows v. Meadows*, 686 S.W.2d 558, 560 (Mo.App.1985). Here, there is no dispute as to husband's financial resources. Husband at the time of trial was earning a gross annual income of nearly $84,000.00, exclusive of a bonus amounting to over $16,000.00. Payment of $660.00 per month child support will not cause husband undue hardship. Further, there is no basis in the record for finding the trial court failed to consider husband's ill health in assessing his financial resources. Should husband's income decrease so as to create a changed circumstance so substantial and continuing as to make the terms of the decree unreasonable, modification may be sought at that time. We find no evidence to indicate the trial court failed to consider the financial resources and needs of Darren and husband as factors relevant to its award of support.

Similarly, no evidence indicates the court failed to consider wife's financial resources and needs. Husband challenges the veracity of wife's listing of income. In so doing, he undertakes a lengthy analysis that essentially imputes as income all deposits made to wife's business account, including an undeposited monthly figure he alleges wife to have received in salary. From this, husband contends that the parties' financial resources are well-balanced, so that an award of support was inappropriate because both the needs of the children and the parties' incomes are the same. *See Atwood v. Atwood*, 664 S.W.2d 673, 675 (Mo.App.1984); *Williams*, 510 S.W.2d at 455. Again, we note that it was the function of the trial court to judge the credibility of wife's testimony. Although there was evidence which might support a different conclusion as to wife's income, we defer to the trial court's view of the facts. *Grams v. Grams*, 789 S.W.2d 846, 849 (Mo. App.1990). Husband's second point is denied.

In his third point, husband contends that the trial court erroneously applied the guidelines in determining the support award. In much of his argument, husband restates the claims of error set forth in his second point. We have already rejected

those claims and will not address them again here. We consider each of husband's remaining claims in turn.

■ First, husband claims error in the trial court's calculation of the support award based upon the parties' support obligation for one child rather than two. Darren's support was the only subject of the motion before the trial court. The Comments to Form 14 direct a court to give "[c]onsideration ... for direct and unreimbursed support provided to a child not the subject of this case, but who is in the custody of one of the parties." MO.CIV. P.FORM 14. In accordance with the Comments, the trial court deducted wife's contribution for the support of Douglas from her award of support for Darren. In so doing, the court essentially determined the parties' separate obligations as if each had independent sole custody of one of the two children. Although we would find merit in an approach that pro-rated the separate obligations based on the total number of children, our Supreme Court in Rule 88.01 and Form 14 did not mandate the use of this method in split-custody cases.[2] Our primary concern is the propriety of the result reached by the trial court, not the route by which it was reached. *Mueller v. Mueller*, 782 S.W.2d 445, 447 (Mo.App. 1990). The trial court considered support for Douglas as required by the Comments to Form 14, and we find no error in its calculation of the award on the facts of this case.

■ Husband next claims error in the court's use of an $1,100.00 figure to represent the parties' combined child support obligation. While the figure is improper in light of *Mehra v. Mehra*, No. 57172, slip op. (Mo.App. March 26, 1991), *transfer granted*, S.C. 73748 (Mo. June 11, 1991), its use was not improper at the time the judgment was rendered in April, 1990. *Mehra* interprets the guidelines as setting the normal maximum needs of one child at $1,000.00

per month for combined gross parental incomes of $10,000.00 or more. *Id.* at 7. The trial court's use of the $1,100.00 figure nearly one year prior to the *Mehra* decision does not constitute grounds for reversal.

■ Husband further claims that the trial court miscalculated the support award by failing to consider Douglas' college expenses. Again, Douglas was not the subject of the motion before the trial court. Even so, the court charged wife with a proportionate share of Douglas' support, deducting this amount from wife's award of support for Darren. No evidence indicates the court failed to consider Douglas' college expenses. The court could have concluded from the evidence that the expenses did not warrant classification as a "special need" sufficient to raise the basic level of support according to the guidelines. Husband fails to mention that the trial court in determining the support award for Darren also did not classify Darren's tutoring expenses as a "special need", so neither husband's nor wife's obligation was increased because of the children's educational expenses.

■ Husband's argument that the trial court failed to consider wife's alleged spousal support in determining her income is also without merit. The court calculated wife's income by adding wife's total earnings from her seasonal employment, one-half of a monetary gift given wife and her spouse, and one-half of the gross receipts received by wife and her spouse from their joint business. The court could properly have found that wife actually received no "spousal support" as that term is used in the Directions for Use of Form 14. Further, the trial court does not appear to have deducted from the gross receipts of wife and her new husband's business the ordinary and necessary expenses required to produce income, so the figure the court used as wife's income may be inflated.[3]

■ Husband next claims error in the trial court's including as income the bonus husband received in 1990. The court

**2.** *See* Williams, *Development of Guidelines for Child Support Orders* (National Center for State Courts: Williamsburg, September 1987) at II–60 and III–8, 13, 69, 72, for discussion and examples of approaches to calculating support in split-custody cases.

**3.** Contrary to husband's assertions, failure to deduct these expenses is not "offset" by the trial

should consider a history of bonuses as a part of average income, unless there is evidence that such bonuses are unlikely to continue. *Guignon v. Guignon,* 579 S.W.2d 664, 667 (Mo.App.1979). The evidence indicated that husband consistently received bonuses: $6,300.00 in 1988, $7,000.00 in 1989, and $16,773.35 in 1990. Husband argues that the future award of such bonuses is doubtful because of his poor health. Although husband's cancer was diagnosed in June of 1988 and resulted in a significant reduction in husband's job status and time on the job, husband's salary was not reduced, and he continued to receive increasing bonuses up to the time of trial. We find no error in the trial court's inclusion of husband's 1990 bonus as income in calculating the child support award.[4]

▆ Finally, husband argues that wife's two-year delay in seeking support for Darren constitutes a tacit agreement between the parties that it was inappropriate for either to pay support for the child of whom each had custody. We recognize that the parties' agreement as to the amount of support may be strong evidence to support a deviation from the amount calculated pursuant to the guidelines. *Howerton,* 796 S.W.2d at 670. However, the evidence here does not indicate the existence of any such agreement.

The trial court's findings reflect that it considered all relevant factors in determining the amount of child support. Husband has failed to overcome the presumption that the amount awarded pursuant to the guidelines is correct. Point three is denied.

▆ In his fourth and final point, husband alleges the trial court erred in awarding wife retroactive child support. We disagree. The court made the support award retroactive to May 21, 1989, the date of service of wife's motion to modify. Section 452.370.6, RSMo (Supp.1990), permits modification of a child support order as to installments which accrued subsequent to the date of personal service. It is within the court's discretion to make the award retroactive, and we will not reverse that decision

absent a clear abuse. *Wexelman v. Donnelly,* 782 S.W.2d 72, 76 (Mo.App.1989). Husband cites no support for his contentions that the court automatically and arbitrarily made the award retroactive without considering the evidence or balancing the equities of the case. In his argument, husband merely restates the claims of error set forth in his prior points; we decline to readdress those claims. Contrary to husband's assertions, we do not find that the retroactive award provides wife an accumulation of capital, nor do we find that a denial of retroactivity is required by wife's delay in filing her motion to modify. *See Heins v. Heins,* 783 S.W.2d 481, 483 (Mo. App.1990); *Otey v. Otey,* 723 S.W.2d 600, 602 (Mo.App.1987). Husband has failed to prove the trial court abused its discretion in making its award of child support retroactive. Point four is denied.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.

---

court's alleged miscalculation of wife's business income and income from seasonal employment.

**4.** The trial court in calculating husband's income included only $16,000.00 as husband's 1990 bonus, although the actual figure was $16,-773.35.